United States Court of Appeals,

Eleventh Circuit.

No. 95-5267.

William Alberto ARANGO, Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF THE TREASURY, United States Customs Service, Defendants-Appellees.

June 24, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-2664-CIV-UUB), Ursala Ungaro-Benages, Judge.

Before TJOFLAT and EDMONDSON, Circuit Judges, and O'NEILL[*], Senior District Judge.

O'NEILL, Senior District Judge:

Appellant William Alberto Arango appeals the dismissal of his complaint challenging the administrative forfeiture of $476,590 seized from his home. Arango's complaint alleges that the Customs Service denied him due process of law by arbitrarily and capriciously rejecting his proof of indigence, thus requiring him to post bond to obtain a judicial forfeiture hearing. Because we find that Customs afforded Arango an adequate opportunity to prove his eligibility for waiver of the bond requirement and reached a decision rationally based on the facts before it, we affirm.

I.

In our plenary review of the district court's dismissal of Arango's complaint, we draw the facts from the complaint and documents incorporated therein, accepting them as true and construing them in the light most favorable to Arango. *Martinez v. American Airlines,* 74 F.3d 247, 248 (11th Cir.1996).[1] On July 24, 1992 United States Customs Service agents seized $476,590 in United

---

[*]Honorable Thomas N. O'Neill, Jr., Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

[1]Documents attached to and incorporated into the complaint were properly before the district court on a motion to dismiss. *See GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir.1993). The court's statement that it reviewed "pertinent portions of the record" does not reveal whether it considered other documents such as those attached to Customs' motion to dismiss. However, Arango concedes that "[t]he factual and procedural background ... does not appear to be in dispute as to material issues." Response to Motion to Dismiss at ¶ 1. He does

States currency from Arango's home during an undercover money laundering investigation. By letter dated August 3, 1992 Customs informed Arango that the currency was subject to forfeiture under a money laundering statute and advised him of his right to seek remission or mitigation of the forfeiture under 19 U.S.C. § 1618. Arango, through counsel, responded on September 16, 1992 by writing "please refer for judicial forfeiture proceeding" on a form provided by Customs.

On November 5, 1992 Customs notified Arango that it intended to initiate summary forfeiture proceedings. Its letter stated that judicial forfeiture proceedings were available if Arango filed a claim for the property and posted a "bond in the sum of $5,000" in accordance with 19 U.S.C. § 1608. It explained that if Arango wanted a judicial hearing but could not afford to post the bond he could apply to proceed in forma pauperis by providing satisfactory proof of his financial inability to post bond under 19 C.F.R. § 162.47(e).

On November 11, 1992 Arango filed a claim of interest and a sworn declaration of indigency in which he stated that he: (1) was self-employed earning an average of $300 per week; (2) did not receive any additional funds from rent, interest, dividends, pensions, or inheritance; (3) did not have any funds in savings accounts; (4) owned a house valued at $80,000 with two mortgages totalling $66,000 and requiring a total monthly payment of $1042.25; (5) owned no stocks or bonds; (6) owned a 1988 Nissan Maxima worth $5,400 with an outstanding loan against it; and (7) was married with four dependent children. On November 25, 1992 Customs acknowledged receipt of Arango's bond waiver request and stated that it required "a financial statement demonstrating Mr. Arango's income and expenses and a copy of Mr. Arango's 1991 Federal Tax Returns." After publishing notice for three successive weeks as required under 19 U.S.C. § 1607, Customs declared the currency forfeited on December 7, 1992.

On December 15, 1992 Arango's attorney provided the requested tax return, which was filed

_____

not assert that the district court improperly considered matters outside the pleadings. *See Peterson v. Atlanta Hous. Auth.,* 998 F.2d 904, 913 (11th Cir.1993) (holding consideration of documents outside pleadings without conversion to summary judgment harmless where nothing further would have been submitted); *see also Washington v. Office of the Comptroller of the Currency,* 856 F.2d 1507, 1511 (11th Cir.1988) (holding consideration of documents on motion to dismiss harmless where claim turned on contents of undisputed administrative record).

jointly by Arango and his wife. It reported total income of $15,914 and three dependent children. In the accompanying letter Arango stated that he had "previously provided" the financial statement in his initial declaration. On January 6, 1993 Customs responded that it had "referred the information to the appropriate office for investigation" and instructed an agent to review Arango's file to determine "if indeed Mr. Arango cannot afford to submit the bond of $5,000 to proceed with the judicial review of his case." As the district director explained to the agent charged with assessing "whether a waiver of the bond is warranted in this case,"

> [t]here are a couple of discrepancies on the financial statement submitted.... The letter states four (4) children and the tax returns reflect (3) children. The financial statement show[s] the expenses of the house and car payments exceed his monthly income. What does he support his family on?[2]

The investigator requested an interview to clarify Arango's financial status. Thereafter, Arango, having been informed that Customs suspected the seized currency was part of a money laundering scheme, invoked his Fifth Amendment privilege against self-incrimination and refused to submit to the interview.[3]

On May 4, 1993, Customs informed Arango's attorney that it would not waive the bond requirement and explained,

> the affidavit presented indicates that Mr. Arango's income is only $300.00 per week; however his monthly mortgage payments total $1042.25. In addition, he also has a car payment. The figures indicate his expenses exceed his monthly income. In order to try to reconcile some of the inconsistencies, the Agent requested to interview your client, which you denied.

> In view of the above, if you wish to pursue this case, you must post the cost bond within fourteen (14) days from the date of this letter.

Arango did not post bond and did not obtain a judicial forfeiture hearing.

On December 15, 1994 Arango filed the present action challenging Customs' refusal to waive the bond requirement and commence judicial proceedings. Customs moved to dismiss on the

---

[2]Arango incorporated this document into his pleadings. *See* "Appeal of the Magistrate's Recommendation & Report" at 5-6.

[3]Arango filed a Complaint and Motion for Return of Property on October 1, 1992 under Federal Rule of Criminal Procedure 41(e) which was dismissed on March 17, 1993. Customs requested and Arango refused the interview while the Rule 41(e) litigation was pending. The government did not indict Arango and did not use the seized currency in a criminal case.

grounds that its denial of Arango's bond waiver petition was reasonable in light of his failure to provide satisfactory proof of his indigency. The district court, adopting the report and recommendation of a United States Magistrate Judge, agreed and dismissed the complaint. Arango filed this appeal.

## II.

Under the customs laws, 19 U.S.C. § 1602 *et seq.,* property valued at less than $500,000 is subject to summary administrative forfeiture. §§ 1607-09.[4] To prevent summary forfeiture and obtain a judicial forfeiture hearing a claimant must file a claim to the seized property and post a bond. § 1608; *Mayfield v. City of Virginia Beach,* 780 F.Supp. 1082, 1084-85 (E.D.Va.1992). The bond is designed "to cover the costs and expenses of the proceedings.... If the outcome of the judicial proceeding is in the claimant's favor, the bond is returned." *Faldraga v. Carnes,* 674 F.Supp. 845, 847 (S.D.Fla.1987). The bond provision serves to "deter those claimants with frivolous claims" from demanding costly judicial proceedings "without hesitation." *Id.* at 851.[5] Because the bond requirement would otherwise deny indigent claimants the opportunity to contest forfeiture, Customs regulations provide that "upon satisfactory proof of financial inability to post bond, [Customs] shall waive the bond requirement for any person who claims an interest in the seized property." 19 C.F.R. § 162.47(e). Arango contends that Customs' application of this provision was arbitrary and capricious and denied him due process.

## III.

At the outset we note that we lack jurisdiction to review the merits of administrative forfeiture decisions. *United States v. One Jeep Wrangler,* 972 F.2d 472, 480 (2d Cir.1992); *In re*

---

[4]Property involved in money laundering as defined in 18 U.S.C. § 1956 is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A). Such forfeitures are governed by 19 U.S.C. § 1602 *et seq. See* 18 U.S.C. § 981(d). Currency, a "monetary instrument" under 31 U.S.C. § 5312(a)(3), is subject to administrative forfeiture under 19 U.S.C. § 1607(a)(4). Property worth less than $500,000 is subject to administrative forfeiture under § 1607(a)(1).

[5]Administrative remedies such as remission or mitigation under 19 U.S.C. § 1618 do not require a bond. Arango did not pursue these remedies, which presume the forfeiture valid but afford relief from the consequences thereof. *See United States v. Morgan,* 84 F.3d 765, 767 n. 3 (5th Cir.1996).

*$67,470.00,* 901 F.2d 1540 (11th Cir.1990).[6]  We do, however, have jurisdiction over claims that "do[ ] not challenge the [forfeiture] determination on its merits" but rather seek review of "the adjudicatory process itself."  *In re $67,470.00,* 901 F.2d at 1545.  Because Arango's claim that he was improperly denied a judicial forum challenges the procedural safeguards attending the forfeiture, his claim arises under Fifth Amendment's Due Process Clause and the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.,* and comes within our federal question jurisdiction under 28 U.S.C. § 1331.  *Scarabin v. Drug Enforcement Admin.,* 919 F.2d 337, 338 (5th Cir.1990);  *In re $67,470.00,* 901 F.2d at 1545.[7]

## IV.

Due process requires an "opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (citations omitted).  Accepting Arango's factual allegations as true, *see Martinez,* 74 F.3d at 248, we find that Customs afforded Arango ample opportunity to prove his eligibility for bond waiver.  It permitted Arango to submit documents in support of his application.  Upon finding his affidavit inconclusive it did not summarily reject his application, but requested tax returns and a financial statement, then referred the file to an investigator.  Finally, it offered Arango an interview to resolve identified discrepancies.  Arango declined the interview and did not submit additional materials to address Customs' concerns.[8]  This process afforded Arango a meaningful opportunity to prove his

___

[6]This Court has recognized an equitable exception to this jurisdictional bar where necessary to prevent manifest injustice.  *In re $67,470.00,* 901 F.2d 1540, 1544-45.  Arango has not invoked this exception.

[7]*See also United States v. Evans,* 92 F.3d 540, 542 (7th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 404, 136 L.Ed.2d 318 (1996) ("If pauper status is denied, the claimant can ... challenge the denial by filing an action in federal district court to set aside the denial as "arbitrary' or "capricious' within the meaning of the Administrative Procedure Act.");  *Toure v. United States,* 24 F.3d 444, 445-46 (2d Cir.1994) (recognizing "jurisdiction to review the procedure by which the forfeiture was effected");  *United States v. Woodall,* 12 F.3d 791, 793 (8th Cir.1993) ("federal courts have universally upheld jurisdiction to review whether an administrative forfeiture satisfied statutory and due process requirements").

[8]During the months between January, 1993 when Arango learned his application was under investigation and May, 1993 when it was denied Arango, who was represented by counsel, did not attempt to elucidate his financial situation either by submitting further documents or by agreeing to the interview he was offered.  *Cf. Jones v. United States Drug Enforcement Admin.,*

"financial inability to post bond" under § 162.47(e) and thus to obtain a judicial hearing. By permitting Arango to submit affidavits and documents to support his petition and by offering him an interview to explain unsatisfactory portions thereof Customs afforded Arango all the process he was due.[9]

Arango asserts that the offer of an interview did not afford him an adequate opportunity to cure deficiencies in his application because Customs' ongoing money laundering investigation posed a risk of self-incrimination that required him to refuse the interview on Fifth Amendment grounds. However, the Fifth Amendment does not forbid adverse inferences against civil litigants, including claimants in civil forfeiture proceedings, who assert the privilege against self-incrimination. *See United States v. Two Parcels of Real Property,* 92 F.3d 1123, 1129 (11th Cir.1996); *United States v. Certain Real Property & Premises Known as 4003-4005 5th Ave.,* 55 F.3d 78, 83 (2d Cir.1995); *United States v. Premises Located at Route 13,* 946 F.2d 749, 756 (11th Cir.1991); *United States v. A Single Family Residence & Real Property,* 803 F.2d 625, 629 n. 4 (11th Cir.1986). A party who asserts the privilege may not "convert [it] from the shield against compulsory self-incrimination which it was intended to be into a sword whereby [he] would be freed from adducing proof in support of a burden which would otherwise have been his." *United States v. Rylander,* 460 U.S. 752, 758-59, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983).[10]

---

801 F.Supp. 15, 26 (M.D.Tenn.1992) (noting that claimant filed and agency considered supplemental affidavit after claimant learned agency found first affidavit inadequate). The fact that he " "failed to avail himself of the full procedures provided ... does not constitute a sign of their inadequacy.' " *McKinney v. Pate,* 20 F.3d 1550, 1565 (11th Cir.1994) (quoting *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 485, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982)), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *accord Nash v. Auburn Univ.,* 812 F.2d 655, 664 (11th Cir.1987) ("that they did not avail themselves of the opportunity to question the witnesses ... cannot be characterized as a denial of process").

[9]Arango unpersuasively cites *Onwubiko v. United States,* 969 F.2d 1392 (2d Cir.1992), a case in which the government not only afforded the claimant no opportunity to prove his indigency but also knew he was indigent because it had seized everything he had with him when he entered the United States. *See id.* at 1399.

[10]Customs could permissibly infer that the financial information, if provided, would have been unfavorable to Arango's claim of inability to post bond. *See Two Parcels of Real Property,* 92 F.3d at 1129 (permitting adverse inference against civil forfeiture claimant). The Fifth Amendment protects criminal defendants against adverse inferences in civil cases that result in "automatic entry" of an adverse judgment. *Premises Located at Route 13,* 946 F.2d at 756;

Arango was entitled to waiver of the bond requirement only upon "satisfactory proof" of his inability to post bond. § 162.47(e). When offered the opportunity to cure defects in his application Arango chose to remain silent rather than to explain the incongruities. Those who choose to remain silent "must bear the consequence of a lack of evidence." *United States v. Taylor,* 975 F.2d 402, 404 (7th Cir.1992). The decision to invoke the Fifth Amendment "is always affected in some way by the exigencies of [the] situation.... [Parties] cannot be free from conflicting concerns and ... must weigh the relative advantages of silence and explanation." *United States v. White,* 589 F.2d 1283, 1287 (5th Cir.1979). Arango presumably decided that the advantages of silence—avoiding incrimination in a criminal investigation—outweighed the potential advantages of explanation—a judicial forum in which to contest property forfeiture. His decision to forgo the opportunity to clarify his finances does not render that opportunity any less meaningful under the Due Process Clause.

At oral argument Arango for the first time challenged the timing of Customs' inquiry into his financial condition, most of which occurred after the currency was declared forfeited on December 7, 1992. Even if this issue were properly raised it would not alter our due process analysis. Where an administrative forfeiture occurs despite a proper demand for a judicial hearing the forfeiture may be set aside and its merits decided anew in a judicial forum. *United States v. Woodall,* 12 F.3d 791, 795 (8th Cir.1993) (holding that because administrative forfeiture violated procedural requirements district court must "set aside the forfeiture Declaration" and either return property or "commence judicial forfeiture"); *Ramirez v. United States,* 767 F.Supp. 1563, 1570 (M.D.Fla.1991) (holding that because Customs ignored bond waiver request "the Court will set aside the administrative forfeiture and will treat its ... bench trial as a judicial forfeiture proceeding").[11] Thus, despite its alleged untimeliness, the opportunity Arango was given to prove his eligibility for

---

*Pervis v. State Farm Fire & Cas. Co.,* 901 F.2d 944, 946-48 (11th Cir.), *cert. denied,* 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990). Arango was not a criminal defendant.

[11]In such instances the administrative forfeiture is effectively vacated and does not deprive the court of jurisdiction as it otherwise would under *In re $67,470.00,* 901 F.2d 1540 (11th Cir.1990).

bond waiver could nonetheless have afforded him the judicial forfeiture hearing he sought.[12]

Arango maintains that Customs' deviation from Department of Justice Policy Directive 93-2 reveals the deficiency of the process by which it handled his bond waiver petition. He concedes that the Directive, an internal policy statement that did not result from formal rule-making or adjudication, is not binding and creates no enforceable rights.[13] Moreover, Customs, an agency within the Department of the Treasury,[14] is not bound by Department of Justice policies. Non-compliance with another Department's internal policies would not alter our conclusion that Customs afforded Arango all the process he was due. The administrative forfeiture of Arango's property arose from his failure to meet the standard of proof required to obtain a judicial hearing without posting bond, and not from the denial of a meaningful opportunity to do so.

V.

Arango asserts that Customs' denial of his petition was arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). In considering this assertion the Court may not substitute its judgment for that of the agency and can set aside an agency's decision only if the agency relied on improper factors, failed to consider important relevant factors, or committed a clear error of judgment that lacks a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (internal quotations and citations omitted); *Preserve Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Engineers,* 87 F.3d 1242, 1246 (11th Cir.1996); *Florida Manufactured Hous. Ass'n, Inc. v. Cisneros,* 53 F.3d 1565, 1572 (11th Cir.1995).

---

[12]Likewise the hearing, if obtained, would have been no less meaningful than it would have been before the forfeiture declaration, as it could have afforded the same relief, return of the amount of currency seized. In such instances where a claimant can obtain "full retroactive relief if he ultimately prevails" his "sole interest" in challenging the timing of the procedures lies in preventing an erroneous interim deprivation pending the retroactive relief. *Eldridge,* 424 U.S. at 339-40, 96 S.Ct. at 905. Because Arango would not have been entitled to possess the seized property while Customs investigated his bond waiver petition, the fact that the currency was deemed forfeited during that time did not deprive him of any interim interest therein.

[13]*See Professionals & Patients for Customized Care v. Shalala,* 56 F.3d 592, 595-96 (5th Cir.1995); *Pacific Gas & Elec. Co. v. Federal Power Comm'n,* 506 F.2d 33, 38 (D.C.Cir.1974).

[14]*See* 19 U.S.C. § 2071.

While we must conduct a "searching and careful" inquiry to assess whether the decision bears the requisite connection to the relevant facts, our ultimate standard of review is narrow and deferential to the agency's conclusions. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Agency action must be presumed valid and rejected only for " "substantial procedural or substantive reasons ... not simply because the court is unhappy with the result reached.' " *Manasota-88, Inc. v. Thomas,* 799 F.2d 687, 691 (11th Cir.1986) (quoting *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978)).[15]

In this case Customs considered the relevant factors and reached a result that bears a rational connection to the facts before it. Customs was charged with deciding whether Arango had provided "satisfactory proof of financial inability to post the bond." 19 C.F.R. § 162.47(e). Arango asserts that because he declared expenses exceeding his income his petition on its face satisfied § 162.47(e), making rejection thereof arbitrary and capricious. We do not agree.

According to Arango's declaration his monthly housing payments left him with $157.75 per month—under forty dollars per week—to cover a car debt and to support himself, a spouse and four dependent children. These facts could raise valid questions in the mind of an agency factfinder that when left unanswered would support the conclusion that Arango had not provided "satisfactory proof" of his financial condition under § 162.47(e).[16] Therefore we cannot conclude that Customs' decision was so devoid of a "rational connection between the facts found and the choice made" that it constituted a clear error of judgment or otherwise violated the APA. *See Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866.

---

[15]*See also Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981) (requiring deference to rational agency decision "even though we might otherwise disagree"); *Duke Power Co. v. Nuclear Regulatory Comm'n,* 770 F.2d 386, 389, 391 (4th Cir.1985) (precluding court from disturbing agency conclusion merely because there are "good reasons on both sides").

[16]In discussing Arango's petition Customs agents referred to "expenses" exceeding income and cited house and car payments. The record does not reveal whether they considered other expenses of which they were aware, such as Arango's ability to retain counsel or the $1,124 health insurance costs reflected as a deduction on his tax return.

In support of his position that Customs' decision was arbitrary and capricious Arango cites *Jones v. United States Drug Enforcement Admin.*, 801 F.Supp. 15 (M.D.Tenn.1992), which held an agency's rejection of a bond waiver petition arbitrary and capricious because its reasons were "inadequate and irrational" and its decision was "clearly erroneous, and betray[ed] a failure to consider relevant factors." *Id.* at 24. *Jones,* however, is factually distinguishable.[17]

While the agency in *Jones* simply rejected Jones' petition as "unsupported in light of your documented standard of living," *id.* at 22, 23, Customs articulated concerns regarding the size of Arango's house and car payments relative to his stated income. When Jones learned that the agency was dissatisfied with his proof of indigency he provided a "second affidavit [that] went into greater detail" as to his income and expenses, *id.* at 23; Arango submitted no such information throughout the months his petition was pending. While Jones' affidavit disclosed no assets other than a truck worth $600, *id.* at 25, Arango's affidavit revealed that he had an unknown amount of equity in car worth $5,400 and about $14,000 of equity in a home worth $80,000. Arango's affidavit thus revealed assets significantly more valuable and less consistent with a claim of poverty than those than those declared in *Jones. See In re Williams,* 628 F.Supp. 171, 172 (E.D.N.Y.1986) (upholding agency's rejection of petitions where affidavits "reflected modest assets" including homes with large outstanding mortgages and tax arrearage).[18]

*United States v. One 1987 Jeep Wrangler,* 972 F.2d 472 (2d Cir.1992), also cited by Arango, is similarly inapposite. The claimant in *One 1987 Jeep* filed a claim demanding a forfeiture hearing.

---

[17]Because *Jones* is factually inapposite we need not decide whether we would follow its reasoning. We note that it reconciled inconsistencies in the petition based on explanations not stated therein and thus conducted an inquiry arguably more searching than the rationality review under the APA. *See id.* at 26 (attributing different income levels to "the unpredictability of self-employment income, and the seasonal nature of landscape contracting").

[18]*Williams* rejected the argument Arango raises in this case that an agency must accept an affidavit on its face "even if [the agency] concludes that the affidavit lacks merit, for to allow any discretion to the agency would be to unite the functions of adversary and arbiter." *Id.* at 173. In holding that "[s]hould the agency reject a pauper's affidavit that is not facially unreasonable ... it must allow [claimants] to subsequently file the bond," *Williams* recognized the agency's discretion to reject an unsatisfactory bond waiver petition even if it presents a facially colorable claim of financial inability to post bond. *Id.* In this case Customs did allow Arango to post the bond within fourteen days of its May 4, 1993 letter rejecting his petition.

The Drug Enforcement Agency decided that his claim pertained only to an earlier seizure and forfeiture that it had abandoned when a state court ordered it to return the seized property. *Id.* at 475, 480-81. Having decided that the claimant had not filed a claim as to the existing seizure and forfeiture, the DEA summarily forfeited his property. *Id.* at 480-81. The court found the DEA's decision so "illogical" and "arbitrary ... in light of the facts" that it effectively "denied [the claimant] the procedural safeguards of the forfeiture statute." *Id.* We cannot say the same of Customs' decision in this case.

The statutory forfeiture scheme under 19 U.S.C. §§ 1607-1618 requires claimants to post bond in order to obtain a judicial hearing in place of more efficient and less costly administrative forfeitures. The indigency exception to that requirement is an important means of affording equal access to such hearings and the right to proceed as an indigent must not be arbitrarily denied. *See Wiren v. Eide,* 542 F.2d 757, 763 (9th Cir.1976); *Jones,* 801 F.Supp. at 27. By the same token, it must not be indiscriminately granted lest the exception eviscerate the statutory bond requirement. Because in this case the decision with respect to that exception bears a rational connection to the relevant facts, it cannot be set aside as arbitrary and capricious under the APA.

In reaching this conclusion we do not hold that a rational agency factfinder could not have reached a different conclusion on the same facts; nor do we hold that a bond waiver petition is deficient merely because expenses exceed income or because the petition fails to account for every dollar in the claimant's budget. We simply hold that Customs' conclusion that Arango failed to present "satisfactory proof" under § 162.47(e) was not irrational in light of the facts before it.

VI.

For the foregoing reasons we AFFIRM the dismissal of Arango's complaint.