Antwan F. PINCKNEY, Plaintiff,

v.

SLM FINANCIAL CORPORATION and Sallie Mae Servicing, a Division of Sallie Mae, Inc., Defendants.

No. 1:04 CV 3764 WBH.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 27, 2005.

Gary Jay Leshaw, Leigh Braslow Altman, Gary Leshaw and Associates, Decatur, GA, for Plaintiff.

James William Martin, Simpson Law Offices, Atlanta, GA, for Defendants.

## ORDER

HUNT, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss [3]. For the reasons stated below, the motion is DENIED.

## I. BACKGROUND

Taken as true at this stage of the litigation, the following factual allegations emerge:

Sallie Mae Servicing (hereinafter "Sallie Mae"), acting on behalf of SLM Financial Corporation (hereinafter "SLM"), claimed that Plaintiff was liable for a loan from SLM to Ms. Donna M. Logan (hereinafter "Logan"), as a co-signor and/or co-borrower. In late May or early June of 2004, Plaintiff received a past due notice from Sallie Mae on the loan between SLM and Logan, instructing him to pay the past due amount of $207.28. Immediately after receiving the past due notice, Plaintiff contacted Sallie Mae, stating that he never co-signed a loan for Logan and requesting copies of all documents supporting Sallie Mae's contention. On or around June 3, 2004, Sallie Mae sent Plaintiff copies of the Loan Application, SLM Financial Corporation's Educational Loan Program Repayment Schedule, a Truth–In–Lending Disclosure, and an Affidavit of Forgery form. According to Plaintiff, the signatures on the loan documents did not belong to him and he returned the completed Affidavit of Forgery form to Sallie Mae on June 8, 2004.

On June 9, 2004, through counsel, Plaintiff wrote to Experian Information Solutions, Inc. (hereinafter "Experian"), Equifax Information Services, Inc. (hereinafter "Equifax") and Trans Union Corporation (hereinafter "Trans Union") requesting that these companies either delete all references to Logan's loan from his credit report or investigate the incorrect entry. Equifax received this letter on June 16, 2004, Experian received the letter on June 17, 2004 and Trans Union received the letter on June 18, 2004.

Also on June 9, 2004, through counsel, Plaintiff wrote to both SLM and Sallie Mae, advising these entities of the forgery and requesting that they take immediate action to have any references to Logan's loan removed from his credit reports. He included his completed Affidavit of Forgery form in this communication, as well as copies of the letters he sent to Experian, Equifax and Trans Union. SLM and Sallie Mae received the letter on June 17, 2004.

Experian and Trans Union acknowledged receipt of Plaintiff's request for removal or investigation on June 22, 2004. Trans Union advised Plaintiff that it would contact the provider of the information. Equifax, Experian and Trans Union all forwarded Plaintiff's disputes to SLM and Sallie Mae in a timely manner for investigation.

On June 24, 2004, Sallie Mae sent Plaintiff copies of a payroll stub and an identification card, representing that these documents were provided to Sallie Mae in connection with Logan's loan application. Sallie Mae asked Plaintiff to "please provide documentation on how Donna Logan obtained these items or forged them." Sallie Mae further explained that it would be unable to process Plaintiff's forgery claim without the requested documents and that collection efforts against Plaintiff would continue until he provided the materials so that Sallie Mae could make a determination about his claim. According to Plaintiff, the payroll stub provided by Sallie Mae is from T.C. Williams High

School, where Plaintiff has never worked in any capacity. The identification card is also from the same school, reflecting Plaintiff's signature in a handwriting that it not his own and presenting a picture that is "blacked out," making it impossible to determine the identity of the person.

On July 15, 2004. Experian informed Plaintiff that it had reviewed the account. Equifax informed Plaintiff on July 21, 2004 that its research conducted in response to the request for investigation verified that the challenged entry (the loan) belonged to Plaintiff. Sallie Mae and SLM verified for the credit reporting agencies that the challenged entry belonged to Plaintiff.

On July 30, 2004, Plaintiff's counsel responded to Sallie Mae's June 24, 2004 letter, advising Sallie Mae that: (1) the signatures on the provided documents were forgeries; (2) Plaintiff could not provide Sallie Mae with documents concerning how the forgery occurred, because he was unaware of the forgery and did not participate in any such act; and (3) Plaintiff needed a clear copy of the identification card. Plaintiff's counsel also notified Sallie Mae that it should communicate directly with counsel rather than Plaintiff. Sallie Mae responded to counsel on August 16, 2004, stating that it was not authorized to provide counsel with any information about Logan's loans without written permission from the borrower.

Plaintiff thereafter filed a police report in Maryland, followed by the present complaint on December 27, 2004, wherein he alleges claims for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (hereinafter "FCRA"), negligence, invasion of privacy and libel.

## II. DISCUSSION

### Motion to Dismiss Standard

A district court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Powell v. United States,* 945 F.2d 374, 375 (11th Cir.1991). In evaluating a motion to dismiss for failure to state a claim, a court must accept as true all allegations contained in the complaint and must view the complaint in the light most favorable to the plaintiff. *Peterson v. Atlanta Housing Auth.,* 998 F.2d 904, 912 (11th Cir.1993). However, while the Court must weigh every inference in plaintiff's favor, "conclusory allegations and unwarranted deductions of fact" may not be taken as true. *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974).[1] The "threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.,* 711 F.2d 989, 995 (11th Cir.1983). Thus, a court can dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only when a plaintiff "can prove no set of facts which would entitle him to relief." *Martinez v. American Airlines. Inc.,* 74 F.3d 247, 248 (11th Cir.1996).

### Plaintiff's FCRA Claim

The FCRA protects consumers from having inaccurate information about their credit status circulated in order to protect their reputation. *Williams v. Equifax Credit Info. Serv.,* 892 F.Supp. 951, 953 (E.D.Mi.1995). Under this Act, furnishers

---

1. Decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v.* *City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

of information [2] to credit reporting agencies have a duty to, among other things, investigate disputed information and report the results of such investigation to the agencies; however, this duty arises only after receiving notice of a dispute from a credit reporting agency. 15 U.S.C. §§ 1681i(a)(2) and 1681s–2(b); *Young v. Equifax Credit Info. Serv.*, 294 F.3d 631, 639 (5th Cir.2002); *Zotta v. NationsCredit Financial Services*, 297 F.Supp.2d 1196, 1205 (E.D.Mo.2003)("[Furnisher's] duty to investigate under § 1681s–2(b)(1) did not arise until it received notice pursuant to § 1681i(a)(2) of a dispute.").[3]

■ Plaintiff alleges that Sallie Mae and SLM violated 15 U.S.C § 1681s–2(b) by failing, after receiving notice of Plaintiff's dispute from various credit reporting agencies, to properly investigate the disputed entry, to review the relevant information provided by the consumer reporting agency, and to report the results of the investigation to the consumer reporting agency. *See* Complaint [1] at ¶ 33–38, 44, 48. Defendants argue that Plaintiff fails to state a claim under § 1681s–2(b) be-

cause "[t]he only proof, as established by this Complaint, that such notice was received by the [credit reporting agency] is the unsubstantiated allegation in ¶ 38 of the Complaint." Memorandum in Support of Motion to Dismiss [3] at 6. Defendants also contend that Plaintiff cannot establish, and did not aver, that Defendants failed to investigate the dispute as required under the Act. *Id.* at 6–7. Defendant is arguing the substantive merits of Plaintiff's claim, which is improper at this stage of the litigation, where the Court accepts as true all of the allegations in the Complaint in order to determine whether Plaintiff has stated a claim for relief. Fed.R.Civ.P. 12(b)(6).[4] In the Complaint, Plaintiff clearly and unambiguously alleges that Defendants, after properly receiving notice of the dispute from the credit reporting agencies, failed to uphold the duties enumerated in 15 U.S.C. § 1681s–2(b) and therefore has stated a claim for relief. Defendants' motion to dismiss this claim is DENIED.[5]

*Plaintiff's State Law Claims*

■ Plaintiff alleges state law claims for negligence, invasion of privacy and libel

**2.** There is no dispute that Defendants qualify as furnishers of information under this statute.

**3.** Section 1681s–2(b) states in relevant part:
(b) Duties of furnishers of information upon notice of dispute
(1) In general
After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency;
(D) if the investigation finds that the information is incomplete or inaccurate, report those

results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis ...

**4.** Of note, while addressing Plaintiff's other claims, Defendant states: "Plaintiff claims that Defendants failed to properly reinvestigate an entry on his consumer credit report after notification was received from CRA's." Memorandum in Support of Motion to Dismiss [3] at 10.

**5.** Defendants spend a large portion of their brief arguing that Plaintiff also fails to state a claim under 15 U.S.C. § 1681s–2(a) because there is no private right of action under this section. Plaintiff acknowledges that no private right of action exists under § 1681s–2(a) and correctly points out that he did not allege a claim under this section in his Complaint. As such, Defendants motion to dismiss pertaining to this section is DENIED AS MOOT.

against Defendants, who argue that these claims are preempted by FCRA and therefore should be dismissed. The Court disagrees.

The FCRA contains two preemption provisions: 15 U.S.C § 1681h(e) and 15 U.S.C § 1681t(b)(1)(F). Prior to 1996, Section 1681h(e) governed state law actions against furnishers of credit information, which provides in relevant part:

> Except as provided in section 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against ... any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

The 1996 amendments to FCRA included the addition of Section 1681t(b)(1)(F), which provides:

> (b) General Exceptions. No requirement or prohibition maybe imposed under the laws of any State—
>
> (1) with respect to any subject matter regulated under—
>
>   *   *   *   *   *   *
>
> (F) section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—
>
> (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws ...; or

> (ii) with respect to section 1785.25(a) of the California Civil Code ..... 15 U.S.C. § 1681t.

Recently, Judge Evans aptly described the differences and overlap between these two provisions:

> This newer language [in § 1681t(b)(1)(F)] provides limits on state law liability that are both broader and more narrow than the older § 1681h(e) language. The newer § 1681t(b)(1)(F) is broader than the older § 1681h(e) in that it preempts all state law claims that may arise from a person's furnishing of credit information to a consumer reporting agency, whereas the § 1681h(e) only preempts state law claims "in the nature of defamation, invasion of privacy, or negligence" to the extent that such claims do not result from willful or malicious conduct. But the newer § 1681t(b)(1)(F) is also more narrow that the older § 1681h(e) in that the preemptions of the newer § 1681t(b)(1)(F) are not triggered until after a furnisher of information is notified by a consumer reporting agency of a consumer's dispute (as required by 1681s–2(b)(1)), whereas the older § 1681h(e) preemptions are available at all times. This cumbersome overlap has resulted in disagreement among courts about how best to harmonize the two applications.

*Johnson v. Citimortgage, Inc.*, 351 F.Supp.2d 1368, 1373 (N.D.Ga.2004)(Evans, J.)

As with Judge Evan's case, the Court also has not located any circuit court case law directly addressing this issue, nor do the parties cite to any. Among the district courts, three interpretations have emerged:

First, some courts conclude that all state law claims are preempted under FCRA because Section 1681t(b)(1)(F) supercedes

the older Section 1681h(e). Second, other courts hold, and Plaintiff argues, that Section 1681t(b)(1)(F) only applies once a furnisher of information receives notice of a dispute from a credit reporting agency. Before notice of a dispute, Section 1681h(e) applies to claims against furnishers of information. Finally, the remaining courts hold that Section 1681t(b)(1)(F) applies only to state law claims created by statute and Section 1681h(e) applies to state tort claims arising from common law. *Johnson*, 351 F.Supp.2d at 1374–75 (describing the three approaches and citing to cases therein). Judge Evans adopted the statutory construction approach and held that " § 1681t(b)(1)(F) applies to state statutory law claims and 15 U.S.C. § 1681h(e) applies to state common law claims." *Id.* at 1376; *see also, Neal v. Equifax Information Services, Inc.*, No. 03–CV–0761–JEC (Order dated March 11, 2004)(also adopting this statutory construction approach). The Court agrees with the sound reasoning and conclusions of both Judge Evans and Judge Carnes and holds that § 1681t(b)(1)(F) applies to state statutory claims and § 1681h(e) applies to state common law claims. Reading the two sections together in this manner gives substantive meaning to both of them, avoids rendering § 1681h(e) superfluous, and prevents applying both § 1681t(b)(1)(F) and § 1681h(e) to the same incident at different points in time.[6]

In addition to the FCRA claim, Plaintiff asserts state common law claims against Defendants: negligence, invasion of privacy and libel. Therefore, the Court must now determine whether Section 1681h(e) preempts these state claims. Pursuant to Section 1681h(e) any claim "in the nature of defamation, invasion of privacy, or negligence" is preempted unless "the false information [was] furnished with malice or willful intent to injure the consumer." *McCloud v. Homeside Lending*, 309 F.Supp.2d 1335, 1343 (N.D.Ala.2004)(quoting, 15 U.S.C. § 1681h(e)). However, "by the plain language of § 1681h(e), the heightened malice standard of malice or willfulness is only applicable to actions based on disclosures pursuant to 15 U.S.C. § 1681g, 1681h, or 1681m, or 'by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report.'" *Johnson*, 351 F.Supp.2d at 1376 (quoting, 15 U.S.C. § 1681h(e)). Plaintiff's state law tort claims are not based on disclosures pursuant to these limitations: §§ 1681g and 1681h apply to consumer reporting agencies, not furnishers of information, and § 1681m "applies to information users but it imposes no duty to disclose absent 'adverse action' by the user against the consumer." *Id.* at 1377. Plaintiff does not allege that Defendants took an adverse action against him based on his credit reports. This case also does not involve, for

---

**6.** With respect to the approach that creates two time frames, referenced as the second approach above, Judge Carnes explains:

> The newer statute, § 1681t, provides furnishers of information with much greater protection (potentially no lawsuits) than does the older statute, § 1681h(e) (allowing defamation [and other tort] actions premised on malice or willfulness). To read the two statutes in [this temporal way] has the effect of giving a furnisher of information more protection from exposure to liability

for acts committed after receiving notice of dispute than for acts committed before such notice. It seems odd to this Court that Congress intended to protect furnishers of information more once they have knowledge that a consumer is disputing an item on his credit report; one would, logically, expect the opposite policy. This Court, therefore, declines to adopt such a reading.

*Neal*, 03–CV–0761–JEC (Order dated March 11, 2004) at p. 13–14.

the same reason, a "user" of a consumer report who has taken an adverse action against a consumer based on the content of the credit report. Therefore, the malice and willful intent requirement is not applicable and § 1681h(e) does not preempt Plaintiff's state law tort claims.[7]

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [3] is DENIED.

---

7. Alternatively, with respect to the invasion of privacy and libel claims, the Court finds that Plaintiff sufficiently alleges that Defendants acted with willful intent in their collection and reporting of credit information about Plaintiff and in their failure to correct the alleged errors. *See* Complaint [1] at ¶¶ 2 and 52. The Court acknowledges that if the malice and willful intent standard of § 1681h(e) applied in this instance, the negligence claim would be dismissed, because, "where there is a requirement of 'malice or willful intent to injure,' there is no cause of action for negligence." *McCloud,* 309 F.Supp.2d at 1342 (internal citations and quotations omitted).