In re John W. WOOD, Jr., Magdalena Wood, Debtor.

John W. Wood, Jr. Plaintiff,

v.

Commissioner, Internal Revenue Service Defendant.

Bankruptcy No. 94–31415–BKC–PGH. Adversary No. 04–3267–BKC–PGH–A.

United States Bankruptcy Court, S.D. Florida, Palm Beach Division.

June 6, 2005.

Frank R. Brady, Boca Raton, FL, for Debtors.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

PAUL G. HYMAN, JR., Bankruptcy Judge.

**THIS MATTER** came before the Court on the Internal Revenue Service's (the "IRS") Second Motion to Dismiss ("Defendant's Motion") and John W. Wood, Jr.'s (the "Plaintiff"), Response to Defendant's Second Motion to Dismiss (the "Response"). On October 19, 2004, the Plaintiff initiated this adversary proceeding. On December 27, 2004, the Plaintiff filed a three-count complaint (the "Complaint") against the IRS seeking *inter alia* a judgment declaring that his tax obligations to the IRS were discharged on February 6, 1995, by means of the Order confirming his Chapter 11 plan (the "Plan"). In the Complaint, the Plaintiff seeks compensatory and punitive damages against the IRS for violations of the automatic stay and contempt of this Court's Order confirming the Plan. The Court, having considered the arguments and memoranda of the parties, hereby **GRANTS** the Defendant's Motion.

### Background

The Plaintiff and his wife filed a petition under Chapter 11 of the Bankruptcy Code on April 29, 1994. The IRS was not listed on the Plaintiff's schedules, but it received notice of the filing of the Plaintiff's petition. The IRS filed a proof of claim in the Plaintiff's Chapter 11 case. The proof of claim was for unpaid taxes in the amount of $22,589.54, of which $20,389.54 was classified as an unsecured priority claim and $2,200.00 was classified as an unsecured nonpriority claim.

The Plaintiff's Plan provided that unsecured claims of less than $90,000.00 would be paid in full from the proceeds of the sale of the Plaintiff's real property. The Plan provided that the claims in the class of unsecured claims of less than $90,000.00 would receive adequate protection by means of monthly installment payments until the sale of the Plaintiff's real property, at which time the remainder of the claims would be paid in full. Neither the Plan, the Plaintiff's schedules, nor the Plaintiff's Amended Disclosure Statement specifically mentioned any outstanding tax claims or individualized treatment of tax claims.

The Plan was confirmed on February 6, 1995, by an Order that contained a general discharge of the Plaintiff's prepetition nonexcepted debts. The discharge provision of the Order provided that "except as provided in the Plan, the individual Debtors are discharged from any debt that arose before the date of confirmation of the Plan, except any debts excepted from discharge under § 523 of the Bankruptcy Code, and except if the Debtors would be denied a discharge under § 727(a) ..." Pursuant to the Plan, the Court retained jurisdiction of the case until all payments and distributions called for under the Plan had been made. On May 18, 1995, the Court issued a final decree and closed the case. The Plaintiff asserts that all payments under the Plan were made and that the Plan was completed on May 17, 2000.

On May 14, 2004, the Plaintiff and his wife filed a Motion to Reopen their Chapter 11 case to resolve two issues unrelated to the present adversary proceeding. On August 10, 2004, the Court granted the Plaintiff's Motion to Reopen Case so that the Plaintiff could file adversary proceedings addressing those issues. On September 14, 2004, the Plaintiff and his wife filed a Motion for Additional Adversary Complaint to resolve the present tax controver-

sy. The Court granted the Plaintiff's Motion for Additional Adversary Complaint on October 12, 2004, and the Plaintiff filed the present adversary complaint on October 19, 2004.

In his Complaint,[1] the Plaintiff alleges that the IRS violated the automatic stay provided by 11 U.S.C. § 362 through its efforts to collect the Plaintiff's outstanding tax deficiencies. For instance, the Plaintiff alleges that the IRS did not file proofs of claim for any outstanding taxes for tax years 1991, 1992, or 1993. Moreover, the proof of claim that it filed for 1994 was fraudulent in that it was filed six months before the Plaintiff filed his 1994 tax return. Furthermore, he alleges that the IRS did not file proofs of claim for his 1995 and 1996 tax deficiencies.

In addition, the Plaintiff alleges that the IRS violated the automatic stay by conducting a 38 day tax audit from September 27, 1994 to November 3, 1994 for outstanding taxes from 1991, 1992, and 1993, without first seeking relief from the automatic stay. The audit allegedly resulted in a $5,562.00 deficiency and $1,112.40 in related penalties. The IRS allegedly conducted another audit of the Plaintiff's taxes between January 8, 1998, and May 29, 1998, for outstanding taxes from 1994, 1995, and 1996, without first requesting relief from the automatic stay. The audit resulted in a $23,663.00 deficiency and $4,732.60 in penalties for the 1994 tax year, a $3,102.00 deficiency and $620.00 in penal-

ties for the 1995 tax year, and a $7,515.00 deficiency and $1,503.00 in penalties for the 1996 tax year.

According to the Plaintiff, he was forced into the United States Tax Court (the "Tax Court Proceeding") under threats and intimidation by the IRS.[2] In the Tax Court Proceeding, the Plaintiff raised some of the same allegations that he currently raises including that the IRS violated the automatic stay by conducting tax audits and issuing notices of deficiency during the automatic stay, and that the Order confirming the Plan discharged the Plaintiff from his unpaid tax liabilities.[3]

Based on these allegations, the Plaintiff seeks compensatory and punitive damages for the IRS's willful violations of the automatic stay and violations of its internal policies and procedures over a ten year period. Count I of the Complaint alleges that the IRS violated its own policies and procedures as stated in the Internal Revenue Manual by pursuing actions to collect on the Plaintiff's prepetition tax liabilities including the tax audit commenced on September 27, 1994. Count I also alleges that the IRS failed to file any proofs of claim for the Plaintiff's prepetition tax liabilities, but only filed a proof of claim for the 1994 tax year. The Plaintiff asserts that he contested the IRS's claims to prepetition and postpetition tax deficiencies in Bankruptcy Court. He asserts that an IRS representative appeared before the Court on or about December 19, 1994, but that

---

1. The Plaintiff's first complaint was met with a motion to dismiss for failure to comply with Rule 7004 of the Federal Rules of Bankruptcy Procedure for failure to serve the United States Attorney for the Southern District of Florida. The improper service was cured by the Plaintiff, and he subsequently filed the present Complaint.

2. The Plaintiff asserts that there were three Tax Court dockets, nos. 2864–96S, 5259–99, and 15992–99, that resulted from the IRS's

effort to collect on his prepetition and postpetition tax liabilities. Two of the dockets, nos. 5259–99 and 15992–99, were addressed in the Tax Court's Memorandum Opinion reported at *Wood v. Commissioner of Internal Revenue*, 88 T.C.M. (CCH) 198, 2004 WL 1926092 (U.S.Tax Ct. August 31, 2004). The other docket, no. 2864–96S, is not reported.

3. *Wood*, 88 T.C.M. 198, 2004 WL 1926092.

the IRS representative did not seek relief from the automatic stay, did not contest the dischargeability of the Plaintiff's pre-petition tax liabilities, did not contest the disclosure statements eliminating the IRS from participation in the Plan, and neither objected to the Plan nor to confirmation of the Plan. Count I further alleges that the IRS sent a notice of deficiency on November 11, 1995, for the Plaintiff's outstanding taxes from 1991, 1992, and 1993. In addition, the IRS allegedly served the Plaintiff with notices of intent to levy and notices of federal tax lien and seized the Plaintiff's income tax refunds for 1997 through 2000 amounting to $10,425.00.

Pursuant to Count I, the Plaintiff requests that the Court enter an eight part judgment seeking various declarations that the IRS violated its own policies as well as the Bankruptcy Code, the IRS prepetition tax claim was disallowed, the Tax Court lacked jurisdiction to hear the IRS's case against the Plaintiff, and that the IRS wrongfully seized the Plaintiff's tax refunds. In addition the Plaintiff seeks a judgment to recover $10,425.00 plus interest and a sanction against the IRS for $100,000.00 for willful disregard of the Bankruptcy Code and this Court's orders.

Count II alleges similar violations of IRS policies and procedures and violations of the Bankruptcy Code stemming from the IRS's audit of the Plaintiff's 1994, 1995, and 1996, tax returns between January 8, 1998 and May 29, 1998. Count II repeals the allegation that an IRS representative appeared in Bankruptcy Court on or about December 19, 1994, but did not seek relief from stay to contest the dischargeability of the Plaintiff's postpetition taxes. Moreover, the Plaintiff alleges that the IRS did not contest the disclosure statements eliminating the IRS from participating in the Plan, the Plan itself, or confirmation of the Plan. The Plaintiff also alleges that the severity of the 142 day audit caused him to lose out of town consulting assignments that would have generated as much as $85,000.00 in income.

Count II also alleges that the Plaintiff was threatened by his receipt of an Income Tax Examination Changes letter that charged the Plaintiff with significantly under-reporting income for the 1994 tax year. The Plaintiff claims that this letter in addition to notices of Intent to Levy and Federal Tax Lien coerced him into Tax Court. The Plaintiff also alleges that the IRS's proof of claim for his 1994 tax deficiencies was disallowed by this Court. In addition, the Plaintiff repeats the allegation that the IRS wrongfully seized his income tax refunds. In Count II, the Plaintiff seeks similar declaratory relief to Count I as well as $100,000.00 in punitive damages against the IRS for contempt of Court and for filing a false proof of claim.

Count III seeks similar declaratory relief and punitive damages for the IRS's audit of the Plaintiff's 1995 and 1996 tax returns. In Count III, the Plaintiff also alleges that the IRS issued a notice of deficiency to the Plaintiff on October 17, 1999. In addition to a declaratory judgment, the Plaintiff seeks $100,000.00 in punitive damages for the IRS's contempt of Court and harassment of the Plaintiff in pursuing these allegedly unlawful tax collection activities.

### Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), (I), and (K). This is an action to determine whether the IRS violated the automatic stay pursuant to 11 U.S.C. § 362(b)(9).

■■■ A defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, as adopted by Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure, should be granted when "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Welt v. Leshin (In re Warmus)*, 252 B.R. 584 (Bankr.S.D.Fla. 2000) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Martinez v. American Airlines, Inc.*, 74 F.3d 247, 248 (11th Cir.1996). In making this determination, the court must "take all the allegations in the complaint as true, and view the complaint in the light most favorable to the plaintiff." *Id.* The Court's task in ruling on a motion to dismiss is not to determine whether the plaintiff is likely to prevail on the merits of the complaint, "but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Phelps v. Kapnolas*, 308 F.3d 180, 184–85 (2d Cir.2002) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)).

The Plaintiff alleges that the IRS violated 11 U.S.C. §§ 362, 505, and 524 by seizing $10,425.00 of the Plaintiff's tax refunds for prepetition tax liabilities without first seeking Bankruptcy Court relief from the automatic stay. The Plaintiff further alleges that the IRS violated various sections of the Internal Revenue Manual, including Sections 8.15 and 25.17, and the automatic stay provision of 11 U.S.C. § 362 when it issued notices of tax deficiency and commenced a United States Tax Court proceeding after his bankruptcy petition was filed. The Plaintiff further alleges that the IRS similarly violated the automatic stay through its postpetition assessments and collection efforts for his postpetition tax deficiencies.

The IRS argues that the Complaint must be dismissed because the Plaintiff has named the wrong party as the defendant. It argues that the IRS cannot sue or be sued, but only the United States may directly be sued. The IRS also asserts that the neither the automatic stay nor the discharge injunction in the Order confirming the Plan prohibit the audit or assessment of either prepetition or postpetition federal tax liabilities. The IRS argues that the automatic stay was in effect only until the Plaintiff received his discharge on May 18, 1995. The IRS also argues that the discharge injunction in the Order confirming the Plan did not prohibit the audit, assessment, or collection of the Plaintiff's tax liabilities because such liabilities are excepted from discharge by 11 U.S.C. §§ 1142(d)(2) and 507(a)(8). Finally, the IRS asserts that collateral estoppel bars the Plaintiff's allegation that the IRS violated the automatic stay because the United States Tax Court previously determined that the Internal Revenue Service had not violated the automatic stay by auditing the Plaintiff's tax returns for tax years 1994, 1995, and 1996, and issuing notices of deficiency for those corresponding years.

### *The Internal Revenue Service Manual Does Not Confer Rights of Action on Taxpayers*

The Court dismisses with prejudice the Plaintiff's requests for declaratory, compensatory, and punitive relief based on the allegations that the IRS violated its own internal policies and procedures. All of the Plaintiff's allegations and requests for relief based on the IRS's alleged violations of its own policies and procedures must be dismissed for failure to state a claim upon which relief can be granted because the Internal Revenue Manual does not confer rights of action on taxpayers. *Carlson v. United States (In re Carlson)*, 126 F.3d 915, 922 (7th Cir.1997) (citing

*United States v. Mapp,* 561 F.2d 685, 690 (7th Cir.1977) *cert. denied,* 523 U.S. 1060, 118 S.Ct. 1388, 140 L.Ed.2d 647 (1998); *United States v. Horne,* 714 F.2d 206, 207 (1st Cir.1983)); *see Cennamo v. United States (In re Cennamo),* 147 B.R. 540, 543 (Bankr.C.D.Cal.1992) (citing *United States v. Will,* 671 F.2d 963, 967 (6th Cir.1982)). "Procedures in the Internal Revenue Manual are intended to aid in the internal administration of the IRS; they do not confer rights on taxpayers." *Id.* Moreover, this Court does not have jurisdiction to adjudicate allegations that the IRS violated its internal policies and procedures because such allegations are neither core matters nor related to a case under title 11. 28 U.S.C. § 157(a), (b)(2).

### *The IRS Did Not Violate the Automatic Stay Regarding the Plaintiff's Postpetition Taxes*

 The Plaintiff's allegations that the IRS willfully violated the automatic stay by auditing his 1994, 1995, and 1996, tax returns, sending an Income Tax Examination Changes letter, sending notices of intent to levy and notices of federal Tax lien, and proceeding against the Plaintiff in Federal Tax Court are dismissed with prejudice. Section 362 of the Bankruptcy Code prevents creditors from taking affirmative actions to collect estate property in order to avoid a race by creditors to snatch up assets of the debtor. *See* The Bankruptcy Code of 1978, H.R. 95–595, 95th Cong., 340–42 (1st Sess.1977), U.S.Code Cong. & Admin.News 1978, 5963, 6296–99 (enacted). Section 362(a)(1) of the Bankruptcy Code provides that the filing of a petition in bankruptcy acts as a stay of the commencement or continuation of a judicial or administrative proceeding "against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case." Section 362(a)(4) prohibits "any act to create, perfect, or enforce any lien against property of the estate." Section 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." However, the version of § 362(b)(9) in effect at the time that the Plaintiff filed his petition[4] did not operate as a stay "of the issuance to the debtor by a governmental unit of a notice of tax deficiency[.]" Therefore, the IRS's issuing notices of tax deficiencies for 1994, 1995, and 1996 did not violate the automatic stay because issuing such notices was not subject to the automatic stay.

 In addition, bankruptcy courts applying § 362(b)(9) prior to the Bankruptcy Reform Act of 1994 have found that postpetition tax audits and assessments do

---

**4.** *See* 11 U.S.C. § 362(b)(9)(1993). The current version of § 362(b)(9) did not apply to cases filed before October 22, 1994. The current § 362(b)(9) does not stay:

(A) an audit by a governmental unit to determine tax liability

(B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;

(C) a demand for tax returns; or

(D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor). *See* The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, effective October 22, 1994; *see also* 11 U.S.C.A. § 362: "1994 Acts. Amendments by Pub.L. 103–394 effective on Oct. 22, 1994, and not to apply with respect to cases commenced under this title before Oct. 22, 1994, see section 702 Pub.L. 103–394, set out as note under section 101 of this title."

not violate the automatic stay. *See, e.g., In re Ungar,* 104 B.R. 517, 520 (Bankr. N.D.Ga.1989) (citing *H & H Beverage Distrib. v. Dept. of Revenue of Pa.,* 850 F.2d 165, 167 (3d Cir.1988), *cert. denied,* 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988); *In re Longley,* 66 B.R. 237, 239 (Bankr.N.D.Oh.1986); *In re Hardy,* 39 B.R. 64, 66 (Bankr.E.D.Pa.1984); *but see In re Ballentine Bros.,* 86 B.R. 198, 202 (Bankr.D.Neb.1988)). Sending notices of a tax audit and performing a tax audit could not be a violation of 11 U.S.C. § 362(b)(9)(1993) because "creditors must be allowed to determine whether they have valid claims against debtors and the extent of those claims ..." *Id.* Determining the amount of a claim is not an action to collect property of the debtor, which would violate the stay. *See id.* Therefore, the IRS's sending notices apprising the Plaintiff of a tax examination change, tax audits, tax liens, and performing the corresponding audits for the 1994, 1995, and 1996 tax years were actions to determine the extent of its claims against the Plaintiff and did not violate the automatic stay.

### The Stay Was Lifted on February 6, 1995

■ The IRS audit, notices, and administrative proceedings against the Plaintiff were not violations of the automatic stay because the stay was lifted when the Plaintiff received his discharge on February 6, 1995. The Plaintiff misconstrues the length of stay relief. The stay is not in effect until the Plan is completed as the Plaintiff asserts. Section 362(c)(2) provides:[5]

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case ... under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

The Plaintiff's Chapter 11 case was closed by a Final Decree entered on May 18, 1995. The Order Confirming the Plan discharged the Plaintiff from prepetition debts on February 6, 1995. According to § 362(c)(2)(C) the stay was lifted when the Order confirming the Plan was entered, and the stay, therefore, was only in effect from April 24, 1994 until February 6, 1995.

■ In addition, once the Plan was confirmed, all remaining property of the estate vested back in the Plaintiff, and the estate was terminated. 11 U.S.C. § 1141(b); *Walton v. Jamko, Inc. (In re Jamko, Inc.),* 240 F.3d 1312, 1313 (11th Cir.2001) (upon confirmation, estate assets vest in reorganized debtor and bankruptcy estate terminates). The audit, notices of audit, deficiency, and tax liens, and the Tax Court Proceeding of which the Plaintiff complains were not initiated until January 8, 1998, well after the stay was lifted and the estate was terminated. Therefore, the IRS was free to move against the Plaintiff's property for his postpetition tax deficiencies after the case was closed. *See Holywell Corp. v. Smith,* 503 U.S. 47, 58, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992) (Section 1141(a) cannot bind creditors with respect to postconformation claims). Moreover, the commencement of the Tax Court Proceeding was not a violation of the automatic stay provided by § 362(a)(8)[6] because the stay had been

---

**5.** Section 362(c)(2) did not change as a result of The Bankruptcy Reform Act of 1994.

**6.** Section 362(a)(8) stays "the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." Section 362(a)(8) was not changed by the Bankruptcy Reform Act of 1994.

lifted when the Plaintiff petitioned that court for redetermination of deficiencies in his federal taxes and reduction of penalties.

### Collateral Estoppel Bar the Plaintiff from Relitigating the Stay Violation Issue

 The Tax Court found that the IRS did not violate the automatic stay by auditing the Plaintiff's 1994, 1995, and 1996, tax returns. *Wood,* 88 T.C.M. 198, 2004 WL 1926092. The Plaintiff alleges that since the IRS violated the automatic stay by commencing an audit during the stay, the Tax Court had no jurisdiction to determine the amount of the Plaintiff's tax deficiencies. The United States Tax Court has limited jurisdiction, which allows it to determine the amount of a tax deficiency. *Id.* (citing *Naftel v. Commissioner,* 85 T.C. 527, 529, 1985 WL 15396 (1985)). The Tax Court's jurisdiction to determine the amount of a deficiency depends upon the issuance of a valid notice of deficiency and a timely filed petition. *Id.* (citing Tax Court Rule 13(a), and (c); *Monge v. Commissioner,* 93 T.C. 22, 27, 1989 WL 75172 (1989); *Normac, Inc. v. Commissioner,* 90 T.C. 142, 147, 1988 WL 3967 (1988)). Since the IRS did not violate the automatic stay by issuing the notices of deficiency, the notices were valid, and the Tax Court had jurisdiction to determine the Plaintiff's tax deficiencies.[7] *See id.*

 Because the Tax Court had jurisdiction to consider the Plaintiff's case, the Tax Court's holding that the IRS did not violate the automatic stay means that collateral estoppel bars the Plaintiff from relitigating that issue in this Court. *See Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (barring relitigation of issue previously determined by court of competent jurisdiction). The Supreme Court explained that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits ..." *Id.* The Supreme Court also has held that collateral estoppel principles apply in bankruptcy cases. *See Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (doctrine of collateral estoppel applies in cases under § 523(a)). There are four factors that must be met to satisfy the doctrine of collateral estoppel:

> 1) the issue must be identical in the pending case to that decided in the prior proceeding; 2) the issue must necessarily have been decided in the prior proceeding; 3) the party to be estopped must have been a party or have been adequately represented by a party in the first proceeding; and 4) the precluded issue must actually have been litigated in the first proceeding. *In re Raiford,* 695 F.2d 521, 523 (11th Cir.1983).

*Blohm v. Commissioner of Internal Revenue,* 994 F.2d 1542, 1553 (11th Cir.1993). In this case, the issue decided by the Tax Court is identical to that raised by the Plaintiff in this adversary proceeding. *Wood,* 88 T.C.M. 198, 2004 WL 1926092. The Tax Court decided that the IRS had not violated the automatic stay based on the same audits[8] for the same tax years

---

7. The Tax Court noted that it did not have subject matter jurisdiction to decide whether the Plaintiff's tax deficiencies had been discharged by this Court, *Wood,* 88 T.C.M. 198, 2004 WL 1926092 (citing *Swanson v. Commissioner,* 65 T.C. 1180, 1184, 1976 WL 3764 (1976)).

8. The Tax Court found that the IRS began its audit of the Plaintiff's 1994–1996 tax returns in December 1997. The Tax Court also found that the IRS issued a notice of deficiency for the Plaintiff's 1995 and 1996 taxes on July 19, 1999. The Plaintiff alleges that the audit began on January 1, 1998 and the notices were

that the Plaintiff complains of in this adversary. *Id.* The Plaintiff initiated the Tax Court Proceeding just as he initiated the present adversary. *Id.* The Plaintiff is collaterally estopped from relitigating whether the IRS violated the automatic stay in regard to its audit and issuing notices for the Plaintiffs 1994, 1995, and 1996, tax deficiencies.

### The Court Need Not Redetermine the Plaintiff's Tax Deficiencies

The Plaintiff also alleges that the Tax Court found that the Plaintiff owes taxes and penalties for inaccurately reporting capital gains, business and personal income, business expenses and losses, and real estate losses for 1994, 1995, and 1996. The Plaintiff challenges the Tax Court's findings and alleges that the Tax Court Proceeding to determine the Plaintiff's deficiencies violated the automatic stay and the Bankruptcy Court's jurisdiction to determine any tax pursuant to 11 U.S.C. § 505.

■■■ The Court has already held that the Tax Court Proceeding did not violate the automatic stay. Moreover, according to § 505(a)(1) "[e]xcept as provided in paragraph (2) of this subsection, the court *may* determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." [9] Since the Court *may* determine a tax, it follows that the Court need not determine such tax despite the Court's retaining jurisdiction in the Order confirming the

Plan. The Plaintiff was free to challenge the IRS's tax audits in Tax Court, and the Tax Court was free to determine the Plaintiff's obligations without violating this Court's jurisdiction.

■■■ As the Court has already held, the Tax Court Proceeding did not violate the automatic stay, and it is well settled that the Tax Court has jurisdiction to redetermine a deficiency. *See, e.g., Wood,* 88 T.C.M. 198, 2004 WL 1926092. Section 1334(e) provides: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate." The bankruptcy court, by means of its derivative jurisdiction from the district court, therefore, has exclusive jurisdiction over the debtor's property and property of the estate. *See* 28 U.S.C. §§ 151, 157(a); *In re FedPak Sys., Inc.,* 80 F.3d 207, 213 (7th Cir.1996) (citing *In re K & L, Ltd.,* 741 F.2d 1023, 1028 (7th Cir. 1984)). However, once the Plan is confirmed, the estate is terminated, property of the estate revests in the debtor, and postpetition causes of action against the debtor may be heard in other forums beside the bankruptcy court. *See* 11 U.S.C. § 1141(b); 11 U.S.C. § 1334(b) ("the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"). It was not a violation of this Court's jurisdiction for the Tax Court to determine the Plaintiff's postpetition deficiencies not only because the stay had been lifted and the Plan

issued on October 17, 1999. The Court accepts the Plaintiff's allegations of the dates of the commencement of the audit and issuance of the notices for the purposes of the Motion. However, the differences in the dates are of no effect because the alleged dates of commencement of the audit and issuance of the notices occurred after the stay had been lifted.

9. Emphasis added.

confirmed, but also because the Bankruptcy Court may share jurisdiction with other courts. *See Blachy v. Butcher,* 221 F.3d 896, 909 (6th Cir.2000), *cert. denied,* 532 U.S. 994, 121 S.Ct. 1653, 149 L.Ed.2d 636 (2001) (bankruptcy court's transfer of constructive trust claim to district court proper because bankruptcy court can share jurisdiction). Accordingly, the Court sees no reason to redetermine this issue when the United States Tax Court provided an adequate forum for the Plaintiff to challenge the IRS's claims of outstanding deficiencies. The Tax Court produced a thorough and careful decision. This Court sees no reason to upset the Tax Court's decision concerning the Plaintiff's postpetition tax deficiencies for 1994, 1995, and 1996.

### The Court Does Not Have Jurisdiction Over the Lost Wages and Seizure of Tax Returns Claims

■■■ The Plaintiff also alleges that the IRS's January 8, 1998, audit precluded him from taking out of town consulting assignments, resulting in $85,000.00 in lost wages. The Plaintiff's allegations for lost wages must be dismissed with prejudice because the Plaintiff's allegations do not arise from a violation of the automatic stay; hence the claim does not arise under title 11. Without the Plaintiff's claim arising under title 11, the Court is without jurisdiction to adjudicate the merits of the claim. 28 U.S.C. § 157(b). The Court must similarly dismiss the Plaintiff's allegations that the IRS violated the automatic stay in seizing the Plaintiff's tax returns to satisfy his postpetition tax deficiencies.[10] The Plaintiff alleges that the IRS's actions violated 11 U.S.C. § 362(a)(6),[11] and (h).[12] However, since the stay had been lifted, the IRS's collection actions could not have been violations of the stay. The Plaintiff's bankruptcy estate had been terminated, and all property seized from the Plaintiff would is beyond the jurisdiction of the Court. Therefore, the Court is without jurisdiction to adjudicate the Plaintiff's allegation as it is not a core proceeding and does not arise under or relate to a case under title 11. 28 U.S.C. § 157(b); 28 U.S.C. § 1334(b); *see Cmty. Bank of Homestead v. Boone (In re Boone),* 52 F.3d 958, 960 (11th Cir.1995) (conduct giving rise to claim occurred postpetition, and therefore the cause of action is not property of the estate).

### The IRS's Proof of Claim was for 1992 Taxes

In Counts I and II, the Plaintiff alleges that the proof of claim filed by the IRS on September 15, 1994, during the Plaintiff's Chapter 11 case, was fraudulently filed.[13]

---

**10.** The Plaintiff also alleges in Count I that the IRS's seizure of his tax returns was a result of deficiencies for prepetition taxes. The Court dismisses that allegation, but without prejudice. The allegation in Count II is dismissed with prejudice.

**11.** The Plaintiff erroneously alleges that the IRS's collection activities violated § 362(d). However, the Court construes the allegation as a violation of § 362(a)(6) because § 362(d) provides for relief from stay on the request of a party in interest after notice and a hearing. Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." Subsections (a)(6) and (d) of § 362 were not affected by the Bankruptcy Reform Act of 1994.

**12.** Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Section 362(h) was not changed by the Bankruptcy Reform Act of 1994.

**13.** The Plaintiff alleges that the IRS filed a fraudulent proof of claim for the 1994 tax

The Plaintiff makes two separate allegations with respect to this proof of claim. First, the Plaintiff alleges that the proof of claim was for 1994 taxes, and since the proof of claim was filed more than six months before the Plaintiff's 1994 taxes were due, it must have been fraudulently filed. However, the Plaintiff is mistaken about the nature of the proof of claim. The IRS's proof of claim was filed for the tax year ending December 31, 1992. The proof of claim clearly indicates that the $20,389.54 unsecured priority claim and $2,200.00 unsecured general claim was for the Plaintiff's 1992 income taxes.

Second, the Plaintiff asserts that the IRS's proof of claim was disallowed during the course of the Plaintiff's Chapter 11 case. As support for this assertion, the Plaintiff points out that the IRS is omitted from the Plaintiff's Amended Disclosure Statement and the Plan. The Plaintiff also asserts that the Court granted his objection to the IRS's proof of claim by means of an order of this Court entered on December 19, 1994.[14] If the IRS's claim was disallowed, it was not disallowed by means of the order entered by the Court on December 19, 1994.[15] The order entered on December 19, 1994, was indeed an Order Sustaining Debtor's Objection to Claim; however, the objection was to the claim of the Polo Club of Boca Raton Property

Association, Inc. That creditor's claim was disallowed, not the claim of the IRS.[16]

The Plaintiff is correct that the IRS is omitted from both the Amended Disclosure Statement and the Plan. The IRS's unsecured claims, if they were treated by the Plan, would have been classified within the Plan with all other unsecured claims of less than $90,000.00. However, the absence of specific treatments of the IRS's claims within the Amended Disclosure Statement and the Plan does not indicate that the IRS's claims for the Plaintiff's prepetition tax deficiencies were disallowed. There is no order in the case file and no entry on the docket report that indicates that the Court disallowed any claim by the IRS.

Similarly, the Plaintiff's allegation that an IRS representative appeared in the Bankruptcy Court on or about December 19, 1994, to pursue the IRS's claim for the Plaintiff's 1994 tax deficiencies must be dismissed with prejudice.[17] The Plaintiff also alleged that the IRS representative's appearance in this Court on or about December 19, 1994, was to pursue the IRS's claims for the Plaintiff's 1991, 1992, and 1993 tax deficiencies. While the two allegations are not inconsistent, it is not possible that the IRS representative appeared in Court to pursue a claim for the 1994 tax deficiency. First, the IRS's purported reason to appear in Court, the proof of

year in paragraphs 5, 47, and 88 of the Complaint.

**14.** The Plaintiff identifies this Order as "Docket Item 57" in paragraph 90 of Count II of the Complaint.

**15.** This Order appears as Court Paper # 57 on the Docket Report. The Court assumes that the Plaintiff intends that "Docket Item 57" and Court Paper # 57 refer to the same Order.

**16.** The Court has examined the entire Docket Report to verify that the Plaintiff did not merely refer to the wrong Court Paper when

attempting to identify an order disallowing the IRS's claim. There is no entry on the Docket Report vindicating the Plaintiff's assertion that the Court disallowed the IRS's claim.

**17.** In Count I, the Plaintiff alleges that an IRS representative appeared at the same hearing to pursue the IRS's prepetition tax claims. Although the Court must dismiss the allegation in Count I, only the allegation in Count II is dismissed with prejudice.

claim, clearly indicates that it was for 1992 taxes. Second, the IRS could not have filed a proof of claim or otherwise appeared in Bankruptcy Court to pursue claims for a tax deficiency before that year's tax returns were actually due. Not only is it unlikely that the IRS would pursue a claim for taxes not yet due, but this Court would not have allowed it to do so. Finally, there is no indication in the docket report that the IRS's claim for 1994 tax deficiencies, if such a claim existed, was disallowed.

### The General Discharge did not Discharge the Plaintiff's Prepetition Tax Debts

■ Moreover, the Plaintiff's assertion that the general discharge in the Order confirming the Plan discharged all of his prepetition debts, including his tax deficiencies, is incorrect. Section 1141(d)(2) provides that "[t]he confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title." *See Federal Communications Comm'n v. Nextwave Personal Communications*, 537 U.S. 293, 303, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003) (the only debts excepted from discharge upon confirmation of plan are those described in § 523). Section 523(a)(1)(A) provides that "a discharge under section ... 1141 ... of this title does not discharge an individual from any debts(1) for a tax ... (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." Section 507(a)(8)(A) refers to "a tax on or measured by income or gross receipts." The general discharge in the Order confirming the Plan did not include those "debts excepted from discharge by § 523." Accordingly, the Plaintiff's prepetition debts for income tax deficiencies would not have been discharged by the general discharge contained within the Order confirming the Plan since debts for income taxes incurred within three years of filing the petition are explicitly excepted from discharge by § 523(a)(1)(A) and § 507(a)(8)(A)(I). The Plaintiff did, however, include the IRS on the service list for creditors in his case. Therefore, the Plaintiff's allegations that the IRS received notice of the Plan and made a court appearance, but did not otherwise object to the Plan cannot be dismissed with prejudice. The Court cannot dismiss these allegations out of hand merely by inspection of the case file and docket report.

### The Plaintiff Has Named the Wrong Party as Defendant

■ In addition, the IRS asserts that it is not a proper party to this action. The Court agrees. "The IRS cannot be sued in its own name because it is not an agency permitted by Congress to be sued *en nomine*." *Price v. IRS*, 2002 WL 1058154 (S.D.Ala. April 11, 2002) (citing *Castleberry v. Alcohol, Tobacco and Firearms Div. of Treasury Dept. of United States*, 530 F.2d 672, 673 n. 3 (5th Cir.1976)), *accord Perry v. United States, Internal Revenue Serv. (In re Perry)*, 90 B.R. 565, 566 (Bankr.S.D.Fla.1988). The Fifth Circuit in *Castleberry*, 530 F.2d at 673, n. 3, explained that "the Congress has not constituted the Treasury Department or any of its divisions or bureaus as a body corporate and has not authorized either or any of them to be sued *eo nomine*." (citing *Morgan v. Bureau of Alcohol, Tobacco, Firearms*, 389 F.Supp. 1099, 1099 (E.D.Tenn.1974)). The Plaintiff must sue the United States directly. The Complaint is dismissed as to all counts.

### Conclusion

The Plaintiff's Complaint is dismissed for failure to name the United States as the proper defendant. Counts II and III

of the Complaint concerning the IRS's actions with regard to the Plaintiff's 1994, 1995, and 1996, tax deficiencies are dismissed with prejudice. Count I of the Complaint is dismissed without prejudice.

### Order

1) The Plaintiff's Complaint is **DISMISSED** for failure to name the United States as the defendant.

2) Counts II and III of the Complaint are **DISMISSED WITH PREJUDICE.**

3) The Plaintiff shall have ten (10) days from the date this Order is filed in which to file an amended complaint.